IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01558-PSF

CHERYL A. FRIEND,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner, Social Security Administration,

    Defendant.

## ORDER ON SOCIAL SECURITY APPEAL

The Court having received the submissions of counsel and having heard their oral arguments enters the following Order.

### I. BACKGROUND

Plaintiff Cheryl Friend appeals from the decision of the Defendant Commissioner denying social security benefits. The Commissioner's decision became final on June 13, 2005, when the Appeals Council notified plaintiff that it found no reason to review the Administrative Law Judge's ("ALJ's") decision of October 21, 2004. Plaintiff timely filed her appeal in this Court on August 15, 2005 (Dkt. # 3). The Social Security Administrative Record ("AR") was filed on October 31, 2005 (Dkt. # 8). The Court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Ms. Friend first filed her claim for benefits on November 15, 1999, claiming an onset date of October 16, 1999. AR 164. This application was initially denied on

February 22, 2000, AR 126-129, and again denied on March 23, 2001, after a hearing before an ALJ. AR 115-25. Ms. Friend requested review of this decision from the Appeals Council, which remanded the case back to an ALJ for further development on June 27, 2003. AR 146-48. A new hearing was held on June 23, 2004 before a different ALJ, AR 153, which led to the unfavorable decision that is the subject of this appeal. *See* AR 21-30.

In her Disability Report, Ms. Friend claims that a "bad right knee and shoulder"[1] constitute her disability and limit her ability to work. AR 194. She indicates that she "cannot lift or carry things. Walking is sometimes hard and so is standing." *Id.* She explains that she stopped working on October 16, 1999, her alleged onset date, due to the "end of season and could not do the cleaning." *Id.*

**A. Medical Record**

The medical record shows that she initially injured her right shoulder on April 20, 1991, suffering a right medial trapezial muscle strain. AR 518. One year later, on April 30, 1992, her orthopedic physician, Dr. Brad Edgerton, found her at maximum medical improvement with a chronic trapezial strain, AR 511, and later released her to full-time light duty work. AR 510, 511.

Several years later, Ms. Friend visited Dr. Blair Pyle on February 2, 1999, whose notes indicate that claimant's "right shoulder is no better. It still hurts when she moves her right shoulder, particularly when she reaches back." AR 329. Dr. Pyle's

---

[1] Ms. Friend was awarded a period of disability for an injury to her right shoulder from April 24, 1991 through April 30, 1992. AR 144-45.

2

examination showed full range of motion.  *Id.*  Dr. Pyle noted that the "[s]houlder pain . . . is of unknown etiology to me.  Particularly it is unknown as to why it is hurting so much for so long and not getting any better."  *Id.*  A visit to Dr. Pyle on September 28, 1999, after she fell, landing on her shoulder and neck, reveals a lack of improvement in her right shoulder.  AR 323.  Dr. Pyle noted tenderness in the trapezius muscle in her neck, extending down her shoulder and into her back, and tenderness in her right shoulder.  *Id.*  He later conducted an impairment rating of Ms. Friend, in which he indicated that "her shoulder pain had resolved" by October 12, 1999.  AR 567.

The medical record indicates that Ms. Friend injured her right knee at work in early September 1998.[2]  AR 320.  Her family physician, Dr. Graves, referred her to an orthopedic physician, *id.*, and Dr. Bagge examined her on September 14, 1998.  AR 357.  Dr. Bagge's treatment notes indicate a conservative treatment, AR 353-56, which eventually gave way to surgery–an arthroscopic lateral retinaculum release of her right knee–on February 1, 1999.  AR 315-16.

After problems with the knee apparently persisted, Ms. Friend went to see Dr. Gary Scott for a second opinion on October 26, 1999.  AR 281.  Dr. Scott's physical evaluation detailed her altered gait, AR 282, "a palpable defect in the lateral retinaculum" and "a fairly striking response to patellar compression."  AR 283.  Ms. Friend demonstrated "substantial thigh atrophy" and "some decreased sensitivity to pinprick."  *Id.*

---

[2]The medical record is not consistent as to the date of this injury, with the alleged date ranging from September 1, 2 and 6, 1998.  *See e.g.* AR 423, 561, 567.

Dr. Scott's x-rays showed well-maintained joint intervals "with no evidence of significant degenerative change with good maintenance of both the medial and lateral compartments." *Id*. He indicated a possible diagnosis of reflex sympathetic dystrophy[3], or "RSD," and suggested a bone scan to address the issue. AR 284. He further noted that "a great part of her dysfunction is that of her severe thigh atrophy/quadriceps dysfunction, which I think will require some vigorous physical therapy." *Id*.

Ms. Friend underwent a bone scan on November 16, 1999, which showed that "[i]njury about the quadriceps tendon or prepatellar bursa cannot be excluded." AR 291. The demonstrated osteopenia and osteoarthritic changes were "consistent with age and sex. No acute fracture or dislocation is identified. No significant soft tissue injury is apparent." AR 292. Dr. Bagge's analysis of the bone scan noted that it was "not definitively consistent" with RSD, and he referred the claimant to Dr. Tom Willis for further RSD evaluation. AR 345.

Dr. Willis examined Ms. Friend on November 30, 1999, finding that she did not "fulfill[] the criteria for reflex sympathetic dystrophy." AR 288. Dr. Willis further stated that "if really desired a lumbar sympathetic block could be done to see if her pain goes away, although I do not really believe this is indicated." *Id*.

On January 12, 2000, a state agency physician–Dr. A. Chester Sudan, Jr.–reviewed Ms. Friend's medical record and completed a residual functional capacity

---

[3]Reflex sympathetic dystrophy is defined in the On-line Medical Dictionary as: "A syndrome of pain and tenderness, usually to a hand or foot, associated with vasomotor instability, skin changes and rapid development of bony demineralisation (osteoporosis). Frequently will follow a localised trauma, stroke or peripheral nerve injury." http://cancerweb.ncl.ac.uk/cgi-bin/omd?reflex+sympathetic+dystrophy.

4

("RFC") assessment.  AR 237-44.  He concluded that she was capable of exertion which would meet the requirements of the light work category.  AR 238; *see* 20 C.F.R. §§ 404.1567(a) and (b) (describing light work).  Dr. Sudan limited her to frequent reaching with her right shoulder, AR 240, and restricted her from concentrated exposure to extreme heat and cold.  AR 241.

Ms. Friend was apparently next seen for her right leg on February 23, 2000 by Dr. Floyd Ring in Denver.  AR 423.  He suggested going forward with a diagnostic lumbar sympathetic block "to see if any significant change is noted in her pain complaints as well as range of motion."  AR 427.  Upon completion of that procedure, Ms. Friend reported "virtually 100% pain reduction," which suggested "some elements of sympathetically maintained pain or RSD."  AR 428.  However, Dr. Ring cautioned that "we will wait and see if any long-term improvement is seen and further recommendations will follow."  *Id.*

Dr. Ring as well as Dr. David Reinhard continued to follow Ms. Friend, recommending additional blocks and physical therapy.  AR 380-82, 388.  Additionally Dr. Pyle apparently continued monitoring Ms. Friend, as he signed a Disability Report on September 12, 2000 indicating that Ms. Friend is "still totally disabled" and a diagnosis of RSD.  AR 436-37.  On October 31, 2000, Dr. Ring performed another nerve block, AR 463-64, and a physical therapy evaluation by Leslie Miller was also conducted.  AR 471.  Ms. Miller found that the claimant had as functional impairments an "altered gait, altered high-level activities of daily living (ADLs), altered ability to work and altered access to community."  AR 472.

The following day, on November 1, 2000, Dr. Reinhard again evaluated Ms. Friend, and reported that the effects of the nerve block had already worn off. AR 480. He determined that "[t]here are no convincing findings for RSD. It is no clear why she is experiencing pain in the right knee." *Id.* He had no additional recommendations for her other than suggesting that she "continue to try strengthening her quadriceps, maintaining flexibility and continuing her home program." *Id.* Dr. Reinhard further stated that he was "skeptical that further skilled treatment is going to significantly improve her condition." *Id.* A functional capacity evaluation ("FCE") on December 21, 2000[4], found that her only major limiting factor was her perception of pain and that the FCE was invalid in two of four categories tested, which is a determination of whether or not the patient is exerting a maximum effort. AR 565.

On January 24, 2001, Dr. Pyle completed an impairment rating for Ms. Friend. AR 567. He found lumbar impairment, hip impairment and knee impairment for a whole person impairment rating of ten percent. AR 568-69. Six months later, on June 8, 2001, another impairment rating was completed by Dr. Darrel Quick. AR 571. He noted that although she walked with the assistance of a cane with a "slightly antalgic gait," she "appear[ed] to have no difficulty ambulating on the level." AR 574. He found that the appearance of her right and left legs was "generally symmetrical" with "no obvious atrophy." *Id.* However, after further examination, including taking

---

[4]Plaintiff describes this FCE as occurring on January 10, 2001. Pl.'s Op. Br. at 5. Although the FCE form includes a handwritten notation at the bottom, "Cheryl Friend 1-10-01," it appears that the actual date of evaluation is December 21, 2000, which is the date the FCE form states Ms. Friend was referred for the FCE. AR 561; *see also* Def.'s Resp. at 6.

measurements, he found "some atrophy in the right quadriceps, which may be related to the original knee injury." AR 575. He determined that her "[c]urrent pain does not appear to meet the classic definition of RSD . . . but may meet the diagnosis of sympathetically mediated pain . . . ." *Id.* Dr. Quick opined that "the hip and low back pain are unrelated to the sympathetically mediated pain involving the entire right lower extremity and that there has been no injury to either the right hip or the lumbar spine." *Id.* Further, Ms. Friend had "not reached a point of maximum medical improvement." *Id.* In other words, further medical intervention is likely to result in improved function. *Id.*

Dr. Quick found no impairment of the right ankle, right hip or lumbar spine, but did find a right knee impairment as well as impairment due to sympathetic pain in her right lower extremity, for a whole person impairment rating of 12%. AR 577. Dr. Quick notes that "this figure is quite close to that determined by Dr. Pyle, although methodology is clearly different." *Id.*

### B. The ALJ's Decision

The first hearing before an ALJ was held on December 6, 2000, and included testimony from a vocational expert. AR 54, 99-108. After an unfavorable decision, AR 118-25, an appeal and a remand, another hearing before an ALJ was held on June 23, 2004. AR 34. Ms. Friend was represented by counsel. Although a vocational expert was present at the hearing, she did not testify. AR 52. The ALJ issued his decision denying benefits on October 21, 2004, finding Ms. Friend "not disabled as defined in the Social Security Act." AR 25.

The ALJ in the decision presently on appeal found that Ms. Friend was not disabled at step four in the five-step sequential disability evaluation process, determining that she was able to perform her past relevant work as a cashier or data entry clerk. AR 25, 30. Specifically, he found that the medical record supported a finding of severe impairment in plaintiff's right knee, due to degenerative changes, status post arthroscopic lateral retinacular release with debridement. AR 26. He found no severe impairments with claimant's right shoulder, and no RSD as a severe impairment, as there was no conclusive diagnosis of RSD in the medical record. AR 27. Finally, the ALJ determined that plaintiff did not provide sufficient evidence to support a finding of severe impairment due to either her low back pain or her left wrist pain. *Id.*

In determining plaintiff's RFC, the ALJ looked at her reported daily activities and her allegations of pain and symptoms. Although he found her testimony "forthright and sincere," he also found that her allegations of disabling pain were inconsistent with the medical and other evidence, including her daily activities, leading him to determine that plaintiff was not "fully persuasive." AR 28. For example, the ALJ noted that Ms. Friend had indicated "she can vacuum, wash laundry, hang it on the line and fold it; and she can sweep and mop; she shops for groceries and she plays with her grandchildren; and she is able to drive a car." *Id.* In sum, the ALJ found that Ms. Friend cannot lift or carry more than 20 pounds occasionally and cannot lift or carry 10 pounds frequently. AR 29-30. But because this RFC "allows for the ability of the claimant to do past relevant work," the ALJ determined that testimony from the vocational expert was unnecessary.

AR 29. The ALJ concluded that she "is not prevented from performing her past relevant work as a cashier or data entry clerk" on the basis of her RFC. AR 30.

## II. PLAINTIFF'S APPEAL

Plaintiff claims that the ALJ erred in three ways. First, the determination that plaintiff does not have a severe disability in her right leg is unsupported by substantial evidence. Although the ALJ found that she did not show sufficient evidence to support a finding of RSD in her right leg, plaintiff maintains she presented substantial evidence to support a finding of a severe disability in her right leg. Second, she claims that it was error of the ALJ to not further develop the record with regard to plaintiff's shoulder and low back pain complaints. And finally, plaintiff contends that substantial evidence does not support the ALJ's credibility determination of her allegations of disabling pain.

## III. STANDARD OF REVIEW

When a federal court reviews the Commissioner of Social Security's decision to deny social security benefits, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). The court's job is to decide whether substantial evidence in the record supports the Commissioner's factual findings as a whole and whether the Commissioner applied correct legal standards. *Id.*; *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).

Substantial evidence is defined as more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See e.g. Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir.

1996); *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989).  Put another way, if other evidence in the record overwhelms the Commissioner's determination, or if only a mere scintilla of evidence supports the decision, it is not based upon substantial evidence.  *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  The Commissioner's decision may also be reversed for application of the wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citing *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)).

**IV.   ANALYSIS**

   **A.   Right Leg Disability**

The ALJ concluded that Ms. Friend's right knee conditions are a severe impairment, but found that RSD was "not an established diagnosis and therefore, not a severe impairment" at step two of the evaluation process.  AR 26-27; *see also* 20 C.F.R. 404.1520(a)(4)(ii) (describing the second step of considering the medical severity of a claimant's impairment).  At step two, a claimant has the burden to "demonstrate an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity."  *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing 20 C.F.R. § 404.1520(c)).  Although step two requires only a "de minimis" showing of impairment, *id.*, "the claimant must show more than the mere presence of a condition or ailment."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).  If the severity of a claimant's impairments is so slight that they could not interfere with the claimant's

ability to do basic work activities, they presumptively do not constitute severe impairments at step two.  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

Although the medical record contains conflicting evidence as to whether Ms. Friend's right leg complaints met the specific diagnostic criteria for RSD, there is certainly substantial evidence in the record from which the ALJ could determine that RSD is not an established diagnosis and not a severe impairment.  *See* AR 288, 345, 480, 575.  However, plaintiff suggests that even without a diagnosis of RSD, her complaints of pain are sufficient to establish "a chronic medical condition of her right leg which had more than a minimal impact on her ability to perform basic work activities."  Pl.'s Op. Br. at 25.

Specifically, Ms. Friend points to the evaluation by Dr. Quick on June 8, 2001.  AR 571-79.  His diagnosis, which rejected RSD, suggested that claimant might meet the definition of sympathetically mediated pain.  AR 577.  The ALJ, according to Ms. Friend, did not give sufficient consideration to Dr. Quick's evaluation, and instead relied upon the evaluation of a non-examining agency physician who saw Ms. Friend a year and a half prior, in January 2000.  Pl.'s Op. Br. at 27-28.  Further, claimant asserts "the ALJ should have evaluated whether the symptoms had more than a minimal impact on her ability to engage in basic work activities, instead of concerning himself about [RSD] diagnosis."  Pl.'s Reply at 2.  At the hearing before the undersigned, plaintiff also noted that a finding of sympathetically mediated pain would support her complaints of pain, and that the ALJ should have given more consideration to plaintiff's complaints of chronic pain in her right leg.  *See* Tr. 3:19-4:14.  Such further consideration, according

11

to plaintiff, could lead to a determination that Ms. Friend can only do sedentary, as opposed to light, work, and with her sitting and standing limitations and past relevant work, the number of jobs available would be significantly reduced.  *See* Tr. 14:18-23.

Even if the ALJ arguably could have found plaintiff's complaints of pain and medical records evaluating her right leg (as opposed to only her right knee) to constitute a severe disability apart from a finding of RSD, there is substantial medical evidence in the record to support his finding that her right knee was her only severely disabling condition supported by the medical record.  For example, Dr. Quick's report, which plaintiff relies upon, notes that she has not reached maximum medical improvement, which he states should be declared when a physician no longer thinks that further medical intervention is likely to result in improved function.  AR 575.  Thus, Ms. Friend's condition, at least as of this diagnosis upon which she relies for a finding of severe impairment of her right leg, was deemed likely to improve with further medical treatment.  Dr. Quick further states that Ms. Friend should be "appropriately reevaluated from the standpoint of whether she has RSD or sympathetically mediated pain" and should be "placed on a treatment regimen that stabilizes and controls her pain" before she will be at MMI.  AR 576.  No medical evidence indicates that such reevaluation or stabilizing regimen was undertaken or has occurred.  Thus, although as plaintiff points out "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all," Pl.s Op. Br. at 28 (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)), there is no

reason to find that Dr. Quick's opinion is necessarily inconsistent with Dr. Sudan's opinion.

Ms. Friend does not argue that the ALJ applied the wrong legal standards, but rather effectively argues that evidence should be reweighed. Although medical records support a finding of pain in Ms. Friend's right leg, there is substantial evidence in the record from which the ALJ could determine that RSD, if it afflicted claimant at all, is not a severe disability and that her right leg gives rise to no other severe disability, apart from her right knee conditions. This is especially true where plaintiff performed work activities after the alleged onset date, *see* AR 40-41, 59-60, and where her reported daily activities include vacuuming, dusting, hanging up laundry, and loading the dishwasher, AR 49. *See also* AR 50 (testimony by claimant that without her hand injury, which she does not contend is a long-term severe impairment, she could perform her previous job); *Williams*, 844 F.2d at 751 (conditions that do not interfere with or have a serious impact on the claimant's ability to do basic work activities presumptively are not severe impairments at step two).

### B. Shoulder and Low Back Pain

Ms. Friend claims that the ALJ erred in not further developing the record with regard to her shoulder and low back complaints. Pl.'s Op. Br. at 28-30. In both hearings, the ALJs found that her chronic trapezial strain, diagnosed in 1992 and aggravated in 1999 after a fall, did not constitute a severe impairment. Ms. Friend cites *Grogan v. Barnhart*, 399 F.3d 1257, 1264 (10th Cir. 2005), for the proposition that "the ALJ has the duty to develop the record by obtaining pertinent, available medical

records which come to his attention during the course of the hearing." However, she does not cite to any such available medical records that the ALJ failed to obtain. Rather, she relies on her own testimony that she completes certain heavy work by using leverage, AR 92-93, and that her shoulder pain had worsened. AR 43-44.

Thus, there is no evidence that the ALJ failed in his duty to further develop the record, and no ambiguity in the medical record exists to justify seeking additional evidence or clarification. *See* 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report of your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Rather, claimant has not provided sufficient medical evidence to support a severe impairment finding of her back or shoulder, and the ALJ noted that no treating or examining physician has placed permanent work restrictions because of her back or shoulder since her alleged onset date. AR 26-27; *see also* AR 80-81 (colloquy in first hearing indicating that no medical records are before the ALJ referring to complaints of back pain, and that the only medical records that will be available are those from Dr. Pyle). Further, the lack of ongoing treatment for her back or shoulder is inconsistent with a finding of severe impairment. *See* AR 49 (plaintiff's testimony that she is not getting treatment for anything other than her hand, which plaintiff does not contend constitutes a severe disability). Plaintiff has failed to meet her burden at step two to show that she had a severe shoulder or back impairment. *See Hinkle*, 132 F.3d at 1352.

14

### C. Credibility Determination

Ms. Friend contends that substantial evidence does not support the ALJ's credibility determination of her allegations of disabling pain. Pl.'s Op. Br. at 30. As plaintiff notes, SSR 96-7 requires an ALJ to "carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record." This includes the entire case record, not just objective medical evidence, and includes daily activities, symptoms, precipitating factors, among other things. SSR 96-7.

Here, the ALJ found that Ms. Friend's "allegation that her impairments, either singly or in combination, produce such symptoms and limitations of sufficient severity to prevent all sustained work activity is inconsistent with the medical and other evidence of record and is not considered to be fully credible." AR 28. He found that her testimony regarding her shoulder pain was inconsistent with the lack of any shoulder complaint evidence in the medical records, and that her daily activities were not as "limited to the extent one would expect given her complaints of disabling symptoms and limitations." *Id.*

Credibility determinations such as this one by the ALJ is "peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). The inconsistencies, such as her shoulder pain, between testimony and other evidence of record, allow an ALJ to question a claimant's credibility. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). Other inconsistencies among her statements to physicians are evident from the record–for example, she

states to Dr. Sudan that she is able to hike, AR 242, but testifies to the ALJ that she cannot, AR 50.  Also, she tells a physician that she wakes up four to five times a night with pain, AR 425, but also tells a physician that she has no pain at rest, only when in motion.  AR 288; *see also* AR 92-95 (inconsistent testimony to the first ALJ regarding her heavy lifting and other work abilities); AR 283 (description of Ms. Friend's performance of knee extension suggests "very poor effort" and is inconsistent with her ability to walk).

Ms. Friend also testified that she was only receiving medical attention for a hand injury, not alleged to be a severe impairment.  AR 49; *see also* AR 43 (testifying that she is not receiving any medical treatment for her knee).  Her failure to pursue ongoing treatment also undermines her complaints of disabling pain.  This is especially true where her pain was responsive to treatment with lumbar sympathetic blocks, as the ALJ noted.  AR 26; *see also* SSR 96-7p (listing "treatment . . . the individual receives or has received for relief of pain or other symptoms" as a factor to be considered in evaluating the credibility of a claimant's allegations of pain).

Although a different balance between the objective medical evidence and plaintiff's testimony might conceivably have been struck by another factfinder, a district court may neither reweigh the evidence nor substitute its discretion for that of the ALJ.  *See e.g. Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991); *see also White*, 287 F.3d at 910 (upholding ALJ's decision "largely in recognition of our limited role").  Here, the ALJ properly set forth the specific and

sufficient evidence relied upon in determining that Ms. Friend's subjective complaints were not fully credible. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

## V.  CONCLUSION

For the reasons set forth above, the Court finds that the record contains substantial evidence supporting the conclusion that plaintiff is not disabled within the meaning of the Social Security Act and the Commissioner's decision is AFFIRMED.

DATED: September 19, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge